In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-4034

FOR YOUR EASE ONLY, INC.,

*Plaintiff-Appellant*,

*v.*

CALGON CARBON CORPORATION,
PRODUCT CONCEPTS COMPANY, and
MARK SCHNEIDER,

*Defendants-Appellees*,

and

HSN, LP,

*Intervening Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 7345—**Wayne R. Andersen**, *Judge.*

ARGUED SEPTEMBER 24, 2008—DECIDED MARCH 31, 2009

Before POSNER, WOOD and TINDER, *Circuit Judges.*

WOOD, *Circuit Judge.* This case immerses us in the
world of off-shore finance, shadowy relations among

companies, and allegedly fraudulent transfers, all for the sake of anti-tarnish jewelry boxes sold on the Home Shopping Network. For Your Ease Only, Inc. ("FYEO") sells these jewelry boxes, and it pursued litigation against some of its competitors for patent misuse and tortious interference with business relations. Although FYEO obtained a $2.19 million default judgment against the defendants in that suit, it has not managed yet to collect on its judgment. One defendant, Mark Schneider, moved to Costa Rica before the final judgment was entered, and Schneider's wholly owned company transferred its main asset—the right to payments from HSN, LP (commonly called the Home Shopping Network)—to an entity called Sevenquest, LLC, which (not so coincidentally) Schneider also owns exclusively. Sevenquest subsequently transferred the right to HSN's payments to Anewco Corp., a company wholly owned by Schneider's brother-in-law, Doug Fournier. FYEO believes that these two transfers are voidable under the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 *et seq.*, but the district court rejected its position. Although HSN appeared only as an observer before the district court, it filed a motion in this court on April 23, 2008, for permission to intervene on appeal; that motion was granted on April 30, 2008, and HSN has fully participated since then. The other defendants-appellees have chosen to take a pass. We conclude that additional findings are necessary before it is possible to decide whether UFTA gives FYEO a right to have the transfers set aside. We therefore vacate the judgment and remand for further proceedings.

**I**

Six years ago, FYEO sued Mark Schneider, his wholly owned company Product Concepts Company ("PCC"), and Calgon Carbon Corporation, for patent misuse and tortious interference. At some point, Schneider and PCC stopped responding to the district court's discovery orders; their insouciance prompted the district court on June 27, 2006, to enter a default against them for $2,120,150.70. Judgment was entered on the default on February 22, 2007, by which time accruing interest had increased the total amount to $2,190,550.93.

By the time FYEO's judgment was entered, PCC's main asset was the right to payments from HSN for the latter's service in selling PCC's anti-tarnish jewelry boxes. Schneider, in his capacity as owner of PCC, had executed an exclusive product merchandising agreement with HSN in 2004. Not long afterward Schneider moved to Costa Rica. In 2005, Schneider transferred the right to the HSN business and payments from PCC to Sevenquest.

Judgment in hand, FYEO began to search for assets belonging to Schneider or PCC. In December 2006, it subpoenaed Fournier, Schneider's brother-in-law. The subpoena informed Fournier of the judgment against Schneider and PCC and noticed Fournier's deposition; it also required him to bring along any records relating to Schneider, PCC, HSN, or Sevenquest. After receiving the subpoena, Fournier flew to Costa Rica to see Schneider. On January 11, 2007, Schneider gave Fournier a letter addressed to HSN; that letter purported to transfer Sevenquest's rights under the HSN agreement

to Fournier's company, Anewco. At that time, however, Anewco did not exist. Fournier established it shortly after his return to the United States.

As it began to learn about these transactions, FYEO took the position that the right to the HSN business is an asset of Schneider and PCC and that it is entitled to reach the HSN payments to satisfy its judgment. Any attempted transfer to Anewco, it adds, was voidable under UFTA. On April 20, 2007, FYEO served HSN with a third-party citation order to discover assets of Schneider and PCC. The citation prohibited HSN from transferring any property or paying any money over to the judgment debtors. An accompanying citation notice, which had been filed with the district court, informed HSN that the judgment debtors were Schneider and PCC. The notice also listed one of Schneider's last known addresses as Sevenquest. Finally, in conjunction with the order and notice, FYEO petitioned the district court for an order restraining HSN from transferring property to the judgment debtors or their successor entities, including Sevenquest and Anewco. The petition asked the district court to require HSN to deposit any payments owed to Schneider, PCC, Sevenquest, or Anewco with the district court.

FYEO's initial efforts were unavailing. On May 5, 2007, HSN paid Anewco $84,856. In response, on June 1, 2007, FYEO amended its petition to include a request for a turnover order for payments made by HSN to Schneider, PCC, Sevenquest, or Anewco in violation of the citation. On June 29, 2007, HSN paid Anewco another $297,360.

The district court held a hearing in October 2007 on FYEO's petition for a turnover order and restraining order. The court noted that only if the payments to Anewco were property of Schneider and PCC could it find that HSN violated the citation. Moreover, the only way that the payments could still be the property of Schneider and PCC was if the transfers to Sevenquest and Anewco were voidable under UFTA. The district court decided that the first transfer from PCC to Sevenquest was voidable because it was fraudulent. See 740 ILCS 160/5(a). In support of that conclusion, the court found that the transaction possessed sufficient "badges of fraud" to justify a presumption of fraudulent intent: the transfer was to an insider because Schneider was the sole owner of both companies; Schneider retained control of the property; the transfer was concealed by Schneider's efforts to avoid discovery; Schneider had been sued before the transfer; the transfer was of substantially all of Schneider's assets; Schneider absconded by moving to Costa Rica; and Schneider was or became insolvent shortly after the transfer. Neither HSN nor the Schneider parties dispute this finding.

The district court then addressed the transfer from Sevenquest to Anewco. Under UFTA, a transfer made after a fraudulent transfer is voidable unless it is made to "a person who took in good faith and for a reasonably equivalent value." 740 ILCS 160/9(a). (This standard is similar to the one for holders in due course of negotiable instruments, who must take for value, in good faith, and without notice of such problems as forgery, default, dishonor, or inauthenticity. See 810 ILCS

5/3-302(a).) According to Fournier, he and Schneider had an oral agreement under which Fournier would develop the business with HSN, and, in exchange, Schneider would transfer the HSN business to Fournier after three years. During that three-year period, Fournier would earn a small commission while Schneider would receive the profits. They made this oral agreement in 2003 or 2004, apparently because Schneider expected his move to Costa Rica to hamper his efforts to fulfill the exclusive contract he had recently signed with HSN. The district court accepted Fournier's description of the transaction and found that Fournier acted in good faith and paid reasonably equivalent value for the HSN rights. This is only partly true, at least as far as the finding of good faith is concerned; Fournier had more to say than this implies.

Fournier testified that he knew of the judgment against Schneider and PCC in December 2006, after he received the subpoena from FYEO and before he accepted the transfer in January 2007. During his deposition he admitted that he traveled to Costa Rica to effect the transfer of the business: "The main reason I went there was to conclude that I've done my three years, this is what we agreed to, I'm sick of your problem, I want to go on my own, and you promised me this." Avoiding the judgment also motivated Fournier to form a new company, Anewco, to hold the asset:

> Q: But it was your purpose in forming Anewco to attempt to try to isolate yourself from Mr. Schneider's legal issues, right?
>
> A: Yes, sir. Part of the reason anyway.

The district court decided that Fournier acted in good faith because, at the time of the transfer, he did not have a legal or financial relationship with Schneider. As the court noted, Fournier did not funnel money to Schneider and did not maintain a business relationship with Schneider after the transfer. Schneider, the court concluded, "was not financially involved and did not have control over it [the HSN payments]." Last, the court found that Fournier's efforts over three years to develop the HSN business constituted reasonably equivalent value for transfer from Sevenquest. On this basis, the court held that the transfer to Anewco was not voidable under UFTA. The right to the HSN payments was held by Anewco, not the judgment debtors, and HSN therefore did not violate the citation by making the payments to Anewco.

## II

Before we address the merits, a word about appellate jurisdiction is in order. FYEO is appealing from an order in a supplemental proceeding to its lawsuit against Schneider, PCC, and Calgon Carbon Corporation. In the underlying case, FYEO obtained a default judgment against Schneider and PCC, but its claim against Calgon Carbon Corporation is still pending. We need not concern ourselves with that fact, however, because this appeal is from a final order in a proceeding to collect on a judgment. That is all that 28 U.S.C. § 1291 requires. See *King v. Ionization Intern., Inc.*, 825 F.2d 1180, 1184 (7th Cir. 1987). (We note for the record that the district court

expressly made a finding pursuant to FED. R. CIV. P. 54(b) that there was no just reason to delay enforcement of the judgment against Schneider and PCC, and it entered a final judgment against Schneider and PCC for $2.19 million on February 22, 2007.)

Because the parties do not dispute the district court's finding that the transfer from PCC to Sevenquest was fraudulent and voidable under 740 ILCS 160/8, the only question on this appeal is whether the district court correctly found that the second transfer, from Sevenquest to Fournier, was made in good faith and for reasonably equivalent value.

A

A central issue here is whether the transfer to Fournier was made in good faith, but a precise definition of that term is hard to come by. UFTA does not supply a definition, and the Illinois courts have not filled this gap by offering one of their own. In this respect UFTA is similar to other statutes that require a finding of good faith. For example, the Bankruptcy Code uses the term without defining it, and courts have similarly resisted articulating a precise definition. See, *e.g.*, *Moglia v. Universal Auto., Inc.*, No. 98 C 5915, 2000 U.S. Dist. LEXIS 10420, at *11-12 (N.D. Ill. July 12, 2000) (listing cases addressing good faith in 11 U.S.C. § 548(c)).

It is somewhat easier to identify situations in which good faith is lacking. Thus, for example, good faith will probably be lacking if the transferee knows that the

transfer may be voidable because he knows of an out-standing judgment against the transferor. The Illinois Court of Appeals has found a lack of good faith where the transferee knew of a pending lawsuit against the transferor and accepted the transfer without informing the plaintiff. *Kennedy v. Four Boys Labor Servs.*, 664 N.E.2d 1088, 1093 (Ill. App. Ct. 1996). Similarly, in a case decided before the enactment of UFTA, the Illinois Court of Appeals found a lack of good faith where the transferee knew of an outstanding judgment and sought protection should any claim to the transferred property arise from that judgment. *Alan Drey Co. v. Generation, Inc.*, 317 N.E.2d 673, 680 (Ill. App. Ct. 1974). In the closely related area of bankruptcy, this court defined good faith for purposes of § 550(b) of the bankruptcy code as a state of mind in which the person is "without knowledge of voidability." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897 (7th Cir. 1988). We commented that knowledge does not require a "complete understanding of the facts . . . some lesser knowledge will do." *Id.* at 898.

FYEO argues that the district court applied the wrong legal standard for good faith and improperly focused on the financial and legal relationship between Schneider and Fournier after the transfer. It is unclear what standard of good faith the district court applied. If what the court meant to say, however, was that good faith exists as a matter of law as long as there is no continuing legal or financial relationship between Schneider and Fournier after the transfer, then we must disagree with it. Whether the transferor receives benefits from the asset after the transfer or retains control over the asset after the transfer

is relevant to whether the transfer is fraudulent under 740 ILCS 160/5(b), but it is not the only pertinent fact. Even though the existence of a continuing legal or financial relationship after the transfer may indicate bad faith, the lack of such a relationship does not establish good faith.

Most importantly, the Illinois cases we cited earlier show that a transferee who knows about a judgment against the transferor does not take the asset in good faith. Here, the facts show that Fournier knew of the judgment against Schneider and PCC before he accepted the transfer of the HSN business. Like the transferee in *Kennedy*, he knew about not only the pending lawsuit, but also the actual judgment against Schneider and PCC. He knew from the subpoena that FYEO was seeking information about the HSN business. In fact, Fournier flew to Costa Rica immediately after learning of the judgment in order to protect "his" HSN business from the judgment.

The district court erred by focusing on the continuing relationship between Fournier and Schneider after the transfer, rather than Fournier's knowledge of the judgment against Schneider at the time he flew to Costa Rica to start the process of transferring the business from Sevenquest to Anewco (a transfer that was not completed until after his trip). Since Fournier knew that the judgment had been entered and that FYEO was pursuing the HSN payments, Fournier did not accept the transfer in good faith. The transfer is therefore voidable under 740 ILCS 160/9.

B

FYEO argues in the alternative that the transfer is voidable because Fournier did not pay a reasonably equivalent value for the HSN business. FYEO points to Fournier's testimony that he did not give Schneider money and challenges the enforceability of the oral agreement. Both arguments lack merit. UFTA does not limit reasonably equivalent value to money nor to value transferred pursuant to a valid contract. The district court found that Fournier's three years of labor to create the business with HSN was reasonably equivalent to the value of the business that labor created. We see nothing clearly erroneous about that finding.

C

The only remaining issue is whether HSN violated the citation when it accepted the transfer of the jewelry box agreement from the Schneider entities to Anewco and thereafter began making its payments to the latter company. Service of a citation puts a lien on "all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 ILCS 5/2-1402(m). If a recipient violates the restraining provision of a citation and transfers the asset, a court "may enter judgment against him or her in the amount of the unpaid portion of the judgment and costs allowable under this Section, or in the amount of the value of the property transferred, whichever is lesser." 735 ILCS 5/2-1402(f)(1).

HSN paid Anewco for the products it was selling after it received the citation and FYEO's petition for a restraining order. HSN argues that expecting it not to pay Anewco is commercially unreasonable, against public policy, and unfair, because it would require HSN to choose between defaulting on its contract with Anewco and violating the citation. Its argument, however, overlooks the third choice that the law provides: taking a page from interpleader procedure, HSN could have arranged to place the payments either in a private escrow account or in the registry of the court. Indeed, FYEO's petition for a restraining order asked the court to order the latter relief, and so it is obvious that HSN was aware of this option.

FYEO urges this court to find that nothing remains to be decided before a turnover order can be entered requiring HSN to pay it $382,216.00, in addition to any additional payments made to Anewco after April 2007. Not so fast, says HSN. HSN points out that the district court never determined whether HSN violated the citation and that unresolved issues of fact should be left to the district court judge. It points out, for example, that the citation does not name Anewco, and so there is some question whether HSN knew that Anewco was, in law, PCC's and Sevenquest's successor in interest. FYEO's petition for the restraining order so names Anewco, but HSN was not required to take FYEO's word for it. The record does contain evidence indicating that HSN may have known that Anewco received the business from Schneider, because the January 11, 2007 letter was from Schneider. Further support for that inference can be

found in the fact that HSN used the same vendor identification number and product identification number for Anewco as it had used for PCC and Sevenquest. That said, upon a full hearing HSN may have additional evidence that is pertinent. It is the district court's role in the first instance to apply the law to the facts. *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 126 F.3d 1028, 1032 (7th Cir. 1997); *Robinson v. Sappington*, 351 F.3d 317, 338 (7th Cir. 2003). We therefore remand this case to the district court to decide whether HSN violated the citation by transferring the assets of PCC and Schneider to Anewco.

We VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.